**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 22 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

GERARDO VIZCARRA,

     Defendant-Appellant.

No. 99-4189
(District of Utah)
(D.C. No. 97-CR-379-1)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

     After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, this court entered an order on May 5, 2000, granting appellant-defendant Gerardo Vizcarra's unopposed motion to submit this case on the briefs without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Vizcarra entered a conditional guilty plea to a single count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a). On appeal, Vizcarra asserts that the district court erred in denying his motion to suppress. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

The facts necessary to resolve this appeal are limited. Vizcarra's arrest and ultimate guilty plea arose out of a traffic stop in central Utah. Utah Highway Patrol Officer Ryan Bauer was patrolling Interstate 15 on November 18, 1997, when he noticed a Chevrolet Yukon that appeared to have a cracked windshield. Officer Bauer drove alongside the Yukon and noticed that the crack originated on the driver's side of the vehicle and extended beyond the halfway point of the windshield. Believing the operation of the vehicle with the cracked windshield violated Utah law, Officer Bauer stopped the Yukon.

Officer Bauer approached the Yukon from the passenger side. When he reached the side of the Yukon, he could see that the crack extended completely across the windshield. Both the driver of the vehicle, Vizcarra, and his passenger, Manuel Varelas, appeared extremely nervous. Officer Bauer asked Vizcarra for his driver's licence and the vehicle registration and explained that he had stopped the Yukon because of the cracked windshield. After receiving the registration, Officer Bauer returned to his patrol car to check the registration and driver's license and to issue a warning for the windshield.

After completing the computer checks, Officer Bauer returned to the Yukon and asked Vizcarra to exit the vehicle so that he could check the VIN number. After checking the VIN number and federal sticker number, Officer Bauer informed Vizcarra that everything appeared to be okay and returned Vizcarra's driver's licence and registration, along with a copy of the warning. At that point, Officer Bauer told Vizcarra that he was free to go and to have a safe trip. As Vizcarra started to reenter his vehicle, Officer Bauer asked him if he would mind answering a few additional questions. Vizcarra responded that he did not mind. Officer Bauer testified that while responding to questions about travel plans, Vizcarra appeared nervous and his answers were vague. Officer Bauer then asked Vizcarra if he could search the Yukon. Vizcarra responded that "he didn't care." Officer Bauer then explained to Vizcarra that it was up to him whether to give permission to search the Yukon and reminded Vizcarra that he had been given permission to leave. Vizcarra again replied that he did not care if Officer Bauer searched the Yukon.

Prior to beginning his search of the Yukon, Officer Bauer asked if he could, for safety purposes, pat down Vizcarra prior to the search. Vizcarra said a pat-down search was fine and raised his arms. During the pat-down search, Officer Bauer found a small packet of cocaine. Vizcarra was then placed under arrest.

During the subsequent search of the Yukon, Officer Bauer found a large brick of cocaine.

Prior to trial, Vizcarra filed a motion to suppress the evidence found as a result of the pat-down and vehicle searches, arguing, *inter alia*, that the initial stop of the Yukon was not legally justified. In particular, Vizcarra argued that Officer Bauer could not have possibly acquired a clear enough view of the windshield to conclude that the crack violated Utah law. In rejecting Vizcarra's suppression motion, the district court first noted that Utah law makes it a crime to drive a vehicle with a seriously cracked windshield on Utah roads.[1] The district court further found as a matter of fact that when Officer Bauer pulled alongside the Yukon in his patrol car, "he could see that the front windshield . . . was cracked. The crack ran across the lower part of the windshield in an acute area and was over 24 inches in length." In light of this finding, the district court

---

[1]*See* Utah Admin. Code R714-158-10E (mandating rejection of vehicle during safety inspection if the vehicle has "[a]ny crack or cracks extending the full length of the windshield either vertically or horizontally", "[a]ny crack or cracks having a cumulative total of 24 inches or more," or "[d]amage other than minor pitting in the acute area" of the windshield"); Utah Code Ann. § 41-6-117 (making it a misdemeanor to drive any vehicle that does not comply with Utah safety rules and regulations); *see id.* § 53-8-209 (empowering all peace officers to stop any vehicle upon "reasonable cause" to believe the vehicle is not in compliance with Utah safety rules and regulations).

concluded that Officer Bauer had probable cause[2] to believe that a traffic violation was occurring.

Vizcarra's argument on appeal is exceedingly narrow. He concedes that the Yukon's windshield violated pertinent Utah law and regulations. Nevertheless, he argues that the district court committed clear error when it found that Officer Bauer observed that the crack exceeded twenty-four inches before stopping the Yukon. Thus, according to Vizcarra, the stop of the Yukon was not supported by probable cause.

In reviewing the denial of a motion to suppress, this court reviews the record in the light most favorable to the government and upholds the district court's factual findings unless clearly erroneous. *United States v. Hunnicutt*, 135

---

[2]As noted by both the district court and the parties on appeal, there appears to be some inconsistency in the case law as to whether a stop of a vehicle in these circumstances must be supported by probable cause or mere reasonable suspicion. *Compare Ornelas v. United States*, 517 U.S. 681, 693 (1996) ("An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion . . . .") *and United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (*en banc*) ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the officer has reasonable articulable suspicion that a traffic or equipment violation has or is occurring.") *with Whren v. United States*, 517 U.S. 806, 810 (1996) ("An automobile stop is [] subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred."). Because, as set out more fully below, this court affirms the district court's conclusion that this stop was supported by probable cause, we need not address the apparent inconsistency.

F.3d 1345, 1348 (10th Cir. 1998). "Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court." *Id.* Nevertheless, the ultimate question of Fourth Amendment reasonableness is a question of law this court reviews *de novo*. *See id.*

As noted above, the district court specifically found that from his perspective, Officer Bauer could see the crack in the windshield and that the crack extended more than twenty-four inches. This finding is amply supported by the uncontradicted testimony of Officer Bauer and is, therefore, not clearly erroneous. *See United States v. Mandilakis*, 23 F.3d 278, 280 (10th Cir. 1994) (holding that under that deferential clear-error standard, this court will reverse the district court only if the district court's factual finding is without support in the record or, after reviewing all of the evidence, "this court is left with the definite and firm conviction that a mistake has been made"). Furthermore, this court has closely reviewed the entire transcript of Officer Bauer's testimony, with particular attention to those passages cited by Vizcarra. That review demonstrates that despite Vizcarra's appellate assertions to the contrary, Officer Bauer never equivocated in his testimony regarding the length of the crack in the windshield. Although Officer Bauer was less sure as to whether the lengthy crack was in the

acute area of the windshield, he steadfastly testified that the crack exceeded twenty-four inches.

As a final matter, we reject Vizcarra's assertion that Officer Bauer was obligated to drive ahead of the Yukon to verify that the crack did, in fact, stretch across the entirety of the windshield. As noted by the district court, probable cause exists where the known facts and circumstances are sufficient to warrant a person of reasonable prudence and belief that a crime is being committed. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996). "[I]ndubitable or necessarily convincing evidence" is not necessary. *See Easton v. City of Boulder*, 776 F.2d 1441, 1450 (10th Cir. 1985). As he pulled alongside the Yukon, Officer Bauer saw that a crack extended from the driver's side post all the way past the half-way point of the windshield. He further concluded that the crack was at least twenty-four inches long. Those observations were sufficient, standing alone, to establish probable cause. This court rejects as both remarkably unwise and completely out of step with Supreme Court precedent Vizcarra's assertion that Officer Bauer was required to take additional, possibly dangerous, steps to **conclusively demonstrate** the existence of a safety violation before he was entitled to stop the Yukon. *See Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("In dealing with probable cause, . . . as the very name implies, we deal with probabilities.

There are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent [persons], not legal technicians, act.").

After a review of the entire record, we conclude that the district court did not clearly err in finding that Officer Bauer observed a lengthy crack in the windshield of the Yukon before pulling it over. Accordingly, the district court did not err in concluding that the stop of the Yukon was supported by probable cause and, thus, consistent with the Fourth Amendment. The order of the district court denying Vizcarra's motion to suppress is hereby **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge